1              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
2                    WESTERN SECTION

3

4

5

   United States of America    )
6                               )      15cr30006-MGM
   vs                           )
7                               )
   John Coughlin                )
8    _____)

9

10              **Transcript of Change of Plea** Held Before
                The Honorable Mark G. Mastroianni,
11              United States District Court Judge,
                    on **December 14, 2015.**

12

13

14

   APPEARANCES:

15

16  For the government:  Todd E. Newhouse, 300 State Street,
    Suite 230, Springfield, MA 01105.

17

18  For the defendant: Linda J. Thompson, Esq., 1331 Main
    Street, Springfield, MA 01103.

19

20

21

                    Alice Moran, CSR, RPR, RMR
22                  Official Federal Court Reporter
                    300 State Street, Room 303D
23                      Springfield, MA 01105
                Tel: (413)731-0086  Fax: (413)737-7333
24                    alice.moran@verizon.net

25

```
 1    (Court commenced at 3:12.)

 2    (The defendant is present.)

 3              THE CLERK:  Judge, this is the matter of the

 4    United States versus John Coughlin, Criminal Action

 5    15-30006.

 6         Can counsel identify yourselves?

 7              MR. NEWHOUSE:  Todd Newhouse for the United

 8    States.

 9              THE COURT:  Good afternoon.

10              MS. THOMPSON:  Linda Thompson for Mr. Coughlin.

11    Afternoon.

12              THE COURT:  Afternoon, Mr. Coughlin.

13         All right.  Ms. Thompson, this is scheduled for a

14    change of plea; is that still the plan?

15              MS. THOMPSON:  That's the plan.

16              THE COURT:  Okay.

17              MS. THOMPSON:  And I appreciate the

18    accommodation on Friday.  It was the plan then too,

19    Judge.

20              THE COURT:  Not a problem.  All right.

21         Mr. Coughlin, can you stand up?  Let me just explain

22    to you -- I'm sure Ms. Thompson has told you -- today at

23    this change of plea hearing it essentially is a

24    conversation that I have with you to make sure you

25    understand what rights you have and what rights you're
```

1    giving up.  All right?

2        So for this hearing you're going to be required to

3    respond to my questions, many of them with just yes or no

4    responses.  Sometimes you might be asked to elaborate.

5        I'm going to allow you to stand right there.  You

6    just stay with Ms. Thompson at the counsel table.  You

7    don't have to get on the witness stand.  I want you to

8    stay there because if you have any questions at any time,

9    just stop the proceeding.  Don't feel embarrassed to do so

10   and talk to your lawyer.  I will give you as much time as

11   you need to talk to her about anything you don't

12   understand.  All right?

13            THE DEFENDANT:  Okay.  Thank you.

14            THE COURT:  Now, the proceeding is going to

15   start by swearing you in and you're sworn in because this

16   is such an important proceeding.  All your responses are

17   required to be under oath.  All right?

18            THE DEFENDANT:  Yes, sir.

19            THE CLERK:  Raise your right hand.

20   **JOHN COUGHLIN (Sworn)**

21            THE COURT:  All right.  Now, Mr. Coughlin, do

22   you understand now that you are under oath and if you

23   answer any questions falsely, your answers could later be

24   used against you for a further prosecution for perjury or

25   for making a false statement?

1            THE DEFENDANT:  Yes, I do, Your Honor.

2            THE COURT:  All right.  Tell me your full name

3    and how old you are and where you were born.

4            THE DEFENDANT:  John Coughlin.  I'm 51 years old

5    and I was born in Boston.

6            THE COURT:  How about school?  How far did you

7    go in school?

8            THE DEFENDANT:  I finished college.

9            THE COURT:  All right.  What did you get your

10   degree in?

11           THE DEFENDANT:  Business management.

12           THE COURT:  All right.  Have you worked?  What's

13   your employment?

14           THE DEFENDANT:  Right now?

15           THE COURT:  No, in the past.

16           THE DEFENDANT:  When I first got out of college

17   I worked for Hertz Rental Car, then I worked for my

18   father-in-law, then I worked for Hertz Rental Car again.

19   For another ten years I worked for Hertz Rental Car in

20   Bradley Airport, Logan Airport in Boston.  I worked in

21   Maine.

22           THE COURT:  What role was that, customer service

23   or what was it?

24           THE DEFENDANT:  I was different levels of

25   manager.  I was a front-line customer service manager and

1    then I was a sales manager training the salespeople.  I

2    actually was an area manager.  I ran the entire state of

3    Maine for Hertz for a few years and then I was the

4    operation manager for Hertz at Logan Airport.

5              THE COURT:  Do you have family?

6              THE DEFENDANT:  Yes, I have -- I'm divorced and

7    I have one son.  He's 25 years old.

8              THE COURT:  Is he in the area?

9              THE DEFENDANT:  He is in South Carolina right

10   now.

11             THE COURT:  All right.  Have you been treated

12   recently for any mental illness or emotional conditions?

13             THE DEFENDANT:  As far as treated as conditions

14   of release I went to a program that was set up, a CRT

15   program that I went to.  That was a condition of the

16   release.

17             THE COURT:  And have you been diagnosed with any

18   emotional conditions or mental illness that requires any

19   type of treatment?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  Have you been treated for any

22   addiction to any narcotic drugs or alcohol?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  Today, while I'm sure you're very

25   nervous and under a lot of stress, do you have any problem

1  understanding me and understanding what's going on here

2  today?

3          THE DEFENDANT:  No, I understand.

4          THE COURT:  Are you confused in any way?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Are you currently under the

7  influence of any drug, medication, or alcohol?  By drug I

8  mean narcotic, non-prescription medication or prescription

9  medication?

10         THE DEFENDANT:  No, Your Honor.

11         THE COURT:  Have you reviewed a copy of the

12 indictment against you in this case?

13         THE DEFENDANT:  Yes, I have, Your Honor.

14         THE COURT:  And that's the document that

15 essentially lays out what all the charges are.

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Do you have any questions regarding

18 what the government is alleging you did and the dates on

19 which the government is alleging you committed that

20 conduct?

21         THE DEFENDANT:  No, I do not, Your Honor.

22         THE COURT:  Now you've been represented by Ms.

23 Thompson and I need to ask you are you fully satisfied

24 with the representation of your counsel, the advice that

25 Ms. Thompson has given to you, and do you feel that she

1    has been acting in your best interest?

2              THE DEFENDANT:  Yes, I do, Your Honor.

3              THE COURT:  While I'm not surprised at all by

4    your answer, now would be the time if you have any issues

5    regarding your counsel to tell me so that a record is made

6    of that.

7              THE DEFENDANT:  No, no issues.

8              THE COURT:  All right.  Now there is no plea

9    agreement in this case, correct?

10             MS. THOMPSON:  That is correct, Judge.

11             THE COURT:  Now, Mr. Coughlin, has anyone

12   attempted in any way to force you to plead guilty to this

13   case?

14             THE DEFENDANT:  No, Your Honor.

15             THE COURT:  Has anyone made any promises or

16   assurances of any kind to you to get you to plead guilty?

17             THE DEFENDANT:  No, Your Honor.

18             THE COURT:  Has anyone told you that you should

19   plead guilty because they know what you'll get, or you

20   will do better if you plead guilty now in an attempt to

21   influence your decision?

22             THE DEFENDANT:  No, Your Honor.

23             THE COURT:  Are you pleading guilty of your own

24   free will?

25             THE DEFENDANT:  Yes, I am.

1              THE COURT:  Are you pleading guilty because you

2    are guilty or for some other reason?

3              THE DEFENDANT:  Yes.

4              THE COURT:  You are guilty?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  All right.  Do you understand that

7    the offenses to which you are pleading guilty are

8    felonies?  That, if accepted by the court, the

9    adjudication of guilt in those cases may deprive you of

10   valuable civil rights, such as the right to vote, the

11   right to hold public office, the right to serve on a jury,

12   or the right to be licensed in any number of ways through

13   state or local or federal licensing applications that you

14   may have to fill out at some point in your life?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  This is I don't believe applicable

17   to you but if it is I need you to understand that if you

18   are not a citizen of the United States, in addition to

19   other penalties you are facing, you may subject yourself

20   to deportation or prevention from obtaining U.S.

21   citizenship; do you understand?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Mr. Newhouse, if you could put on

24   the record for each offense of what the maximum potential

25   penalty is, and if you know -- if you have, and I'm sure

1    you have, what an informal guideline calculation you

2    believe we are at for those offenses in addition to the

3    maximums allowable.

4            MR. NEWHOUSE:  For each count there's no minimum

5    mandatory, a 20-year statutory maximum, a $250,000 fine,

6    five years of supervised release, a $100 special

7    assessment.  The estimated guideline range with acceptance

8    is 41 to 51 months and restitution is $19,626.

9            THE COURT:  Now, Mr. Coughlin, I asked Mr.

10   Newhouse to put on the record what the maximum offense

11   (sic) is, not because you might be likely to get the

12   maximum offense just because you're entitled to know what

13   the maximum potential offense is and also what Mr.

14   Newhouse's preliminary guideline range calculation was.

15       All right.  Did you hear him and understand what he

16   said regarding the maximum potential penalty?

17           THE DEFENDANT:  Yes, I did, Your Honor.  Can I

18   ask my lawyer one question?

19           THE COURT:  Absolutely.

20   (Off-the-record discussion.)

21           THE COURT:  All set?

22           THE DEFENDANT:  Yes, I do understand.

23           THE COURT:  All right.  And I asked Mr. Newhouse

24   to tell me what he thought the advisory sentencing

25   guidelines were and I'm sure your attorney has talked to

1    you about them; is that correct?

2              THE DEFENDANT:  Yes, she has, Your Honor.

3              THE COURT:  They are advisory sentencing

4    guidelines and the government's calculation of what those

5    may be could very well be different than what your

6    attorney's calculation might be and they may be very

7    different from what the calculation of the probation

8    department ends up being for the guideline range, but at

9    this stage in the proceedings it's normal for the parties

10   to do their calculations.  Do you understand that?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  It's important for you to know also

13   that the guidelines are advisory and the court, even if

14   there's agreement between all the parties what the

15   guidelines should be, the court does not have to impose a

16   sentence within those guidelines.  In other words, I could

17   give you something different even if all the parties

18   agreed to what the guidelines are.  Do you understand

19   that?

20             THE DEFENDANT:  Yes, I do, Your Honor.

21             THE COURT:  Ms. Thompson.

22             MS. THOMPSON:  I just wanted you to know that my

23   guideline calculations are different from Mr.

24   Newhouse's.

25             THE COURT:  All right.  I'm glad that I said

1    that I thought yours might be and that's not unusual.

2    Oftentimes there's litigation and disagreements about how

3    the guidelines should be calculated.  Okay?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  So one thing I want to go over again

6    just to make sure you understand when we're talking about

7    advisory sentencing guidelines in some cases they're more

8    important than in other cases, but if, and this is if, if

9    you received a sentence that's outside or above what you

10   hoped the guidelines would be, or even if it's outside or

11   above what there seems to be an agreement as to what the

12   guideline calculations are, you will not have a right to

13   withdraw your plea and say, hey, that's not what I

14   bargained for.  Do you understand that?

15             THE DEFENDANT:  Yes, I do, Your Honor.

16             THE COURT:  Now, generally, generally the court

17   will not be able to determine an advisory guideline range

18   until after a presentence report has been completed, and

19   when that is completed you and the government will have an

20   opportunity to challenge both the reported facts in that

21   report put together by the probation department, as well

22   as the calculation by which the probation department

23   reached an advisory guideline range.

24        You will be able to bring those objections forward

25   and argue them to the court if you believe that the

1    guidelines have been calculated incorrectly.  Do you

2    understand that?

3              THE DEFENDANT:  Yes, I do, Your Honor.

4              THE COURT:  Do you understand that if you are

5    incarcerated, that parole has been abolished so you will

6    not be released early on parole if you are sentenced.  Do

7    you understand that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Do you also understand that under

10   some circumstances you or the government have the right to

11   consider appeal options to any sentence that's imposed?

12   You do have some rights to appeal relative to sentencing

13   and I want you to know you have that right.  Do you

14   understand?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  You can discuss that and explore

17   that option at the appropriate time with your attorney.

18        Mr. Coughlin, do you understand that you have the

19   right to plead not guilty to any offense, any offense

20   charged against you and to assist on your right to a

21   trial?  That that trial would be a trial by jury.

22        At that trial you would be presumed to be innocent

23   and the government would have to prove your guilt beyond a

24   reasonable doubt, and for the jury to convict you their

25   verdict would need to be unanimous.  Do you understand

1    that?

2              THE DEFENDANT:  Yes, I do, Your Honor.

3              THE COURT:  At the trial you would have the

4    right to the assistance of your lawyer, Ms. Thompson.  You

5    would have the right to see and hear all witnesses against

6    you and to have them cross-examined in your defense.  Do

7    you understand?

8              THE DEFENDANT:  Yes, I do, Your Honor.

9              THE COURT:  You would have the right on your

10   part to call witnesses on your own if you wanted to and

11   the right to testify in your own behalf if you wanted to.

12   Do you understand?

13             THE DEFENDANT:  Yes, I do, Your Honor.

14             THE COURT:  Now if you declined to testify on

15   your own behalf or if you decided not to call your own

16   witnesses, I would instruct the jury that that could not

17   be considered against you in any way, shape, or form.  Do

18   you understand that?

19             THE DEFENDANT:  Yes, I do, Your Honor.

20             THE COURT:  You would have the same right as all

21   members of your jury would have.  That is, to be presumed

22   innocent and essentially you can just sit at counsel table

23   saying to the government, figuratively, you charged me

24   with this, you prove this.  I don't have to say a word.

25   You have to prove this beyond a reasonable doubt.  I would

1    give the jury that type of instruction to make sure if you

2    chose not to testify, it could not be held against you.

3    Do you understand that?

4              THE DEFENDANT:  Yes, I do, Your Honor.

5              THE COURT:  Now in criminal cases oftentimes

6    there are challenges to how the government collects its

7    evidence.  Sometimes they are known as motions to suppress

8    where the defense will challenge the government's methods

9    of collecting evidence suggesting that if rights or

10   procedures were violated that the evidence should be

11   thrown out or suppressed, not used against you.  Do you

12   understand that?

13             THE DEFENDANT:  Yes, I do, Your Honor.

14             THE COURT:  Now, do you understand that when you

15   plead guilty, as you're in the process of doing, you give

16   up all your rights relative to challenging evidence with

17   motions to suppress and all the rights that I just told

18   you about regarding a trial by a jury?  You're giving up

19   all those rights.  Do you understand?

20             THE DEFENDANT:  Yes, I do, Your Honor.

21             THE COURT:  And the important thing, the very

22   important thing to understand is that those rights are

23   gone forever.  So if two months down the road, six months

24   down the road, five years down the road you decide, hey,

25   that was a -- I'm not good with my decision that I pled

1    guilty.  I want to go back and have my trial.  You're not

2    going to be able to do it.  Do you understand?

3            THE DEFENDANT:  Yes, I do, Your Honor.

4            THE COURT:  Ms. Thompson, if I can ask you in

5    your representation of Mr. Coughlin have you become aware

6    of any perhaps physical issues, mental health issues,

7    emotional factors, medication, anything that might

8    compromise his judgment from where it needs to be here

9    today for this change of plea?

10           MS. THOMPSON:  No, I have not.

11           THE COURT:  All right.  Have you gone over the

12   elements of the offense with him?

13           MS. THOMPSON:  I have.

14           THE COURT:  All right.  Do you know of any area

15   that I should inquire of more that is a concern to you

16   regarding the voluntariness of Mr. Coughlin's plea?

17           MS. THOMPSON:  I do not, Judge, but I did also

18   -- I just want to let the court know that I advised Mr.

19   Coughlin of his jury selection, participation in jury

20   selection rights.

21           THE COURT:  All right.  Thank you.

22       Mr. Coughlin, your attorney is correct.  As part of

23   the jury process, you would have the right to participate

24   in the selection of who you wanted to sit as a juror.  You

25   would have a say in that.  Do you understand?

1              THE DEFENDANT:  Yes, I do, Your Honor.

2              THE COURT:  But that's a jury right that again

3      you are giving up as I have explained.

4              THE DEFENDANT:  Yes, Your Honor.  I understand.

5              THE COURT:  Now knowing all that, knowing all

6      the rights you have and all the rights that you are giving

7      up, is it still your intention to change your plea to that

8      of guilty?

9              THE DEFENDANT:  Yes, Your Honor, it is.

10             THE COURT:  All right.  At this point, Mr.

11     Coughlin, I'm going to ask Attorney Newhouse to make a

12     record of what the government's evidence would be that it

13     would offer.  You can sit down.

14             THE DEFENDANT:  Thank you, Your Honor.

15             THE COURT:  What the government's evidence would

16     be against you that they would offer at trial and how they

17     would satisfy the elements of each charge, and I'm going

18     to ask you to pay close attention because I'm going to ask

19     you if you agree with what Mr. Newhouse tells me or if you

20     need to change it or modify it in any way.  Do you

21     understand?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Mr. Newhouse, if you could?

24             MR. NEWHOUSE:  First of all, I filed a Speedy

25     Trial motion today.  I previously filed one up through

1    what was the first change of plea date of October 20th.

2    At the defendant's request, the date was twice changed to

3    today and so I would ask that the time from October 20th

4    and December 14th be excluded.

5              THE COURT:  All right.  Not opposed?

6              MS. THOMPSON:  No.  In fact, I put it in my

7    motion that we did not contest that.  We agreed it was

8    appropriate.

9              THE COURT:  All right.  For the reasons stated

10   in the motion that was the defendant's request, that will

11   be allowed.

12             MR. NEWHOUSE:  The victims' names, the one

13   teller at each bank, had been provided to the defendant,

14   Judge.  In addition each bank is a victim and the

15   individuals who supplied information, their names are in

16   the discovery also.

17        The amount stolen from each bank appear in the

18   indictment and the total is $19,626.  It's my memory that

19   the final bank that he robbed on September 4th that amount

20   might have changed slightly after the count was finished

21   and I will supply that to probation when I find out about

22   it.

23        On September 5, 2014 the government would have shown

24   that at approximately 12:56 a white male, approximately

25   5'9, 190 pounds, wearing a baseball cap and dark glasses

1    entered the Savers Bank at 55 Main Street, Sturbridge,

2    Mass. and handed the teller a note which said, "This is a

3    robbery.  I have a gun.  No alarms, no games, nobody gets

4    hurt.  Quickly give me the money.  No dye packs, no GPS

5    tracking.  Quickly give me the money and nobody will get

6    hurt.  No dye packs, no GPS, no alarms."

7         He left the note behind.  This caused the teller to

8    become in fear for her life and she therefore provided the

9    defendant with all the money in her drawer which amounted

10   to $4,326 and she had also included the dye pack in the

11   bag.

12             THE COURT:  I'm sorry, the amount one more time?

13             MR. NEWHOUSE:  It's set forth the indictment,

14   $4,326.

15        This individual left the bank and several blocks away

16   witnesses observed the dye pack explode and saw a red

17   cloud around the individual as he walked away.  A civilian

18   reported an unfamiliar red vehicle with Connecticut plates

19   was parked in his neighborhood.  The Sturbridge Police

20   broadcasted a BOLO description and the following

21   description of "bank robber, white man, heavyset wearing a

22   plaid shirt, hat and sunglasses."

23        A police officer working a paid detail in uniform in

24   a marked cruiser heard the BOLO and at approximately 1:14

25   p.m. saw a vehicle matching the description pull into

 1    traffic.  He saw the vehicle.  He then pulled into traffic

 2    behind the vehicle and effected a motor vehicle stop.

 3        The officers -- another officer joined him.  The

 4    officers observed the driver and the only occupant

 5    subsequently identified as the defendant before you today,

 6    John Coughlin, with red dye on his hands, clothes,

 7    steering wheel of the car, and the dye was consistent with

 8    what comes out of an exploited dye pack.

 9        The defendant was ordered out of the car and officers

10    observed the handle of a handgun in the driver's door

11    compartment.  A computer check revealed that Mr.

12    Coughlin's license was suspended and there was an open

13    arrest warrant for operating after suspension.

14        The officers observed in the passenger's side floor a

15    plaid shirt, white hat, and U.S. currency all covered in

16    red dye.  Mr. Coughlin was arrested on the motor vehicle

17    warrant and transported to the police station.

18        The details of the robbery were sent to other

19    departments.  Sturbridge and Worcester police detectives

20    responded to the station.  Mr. Coughlin was given *Miranda*

21    and agreed to talk to the officers from Sturbridge and

22    Worcester.

23        Later a Massachusetts State Police detective

24    responded to the station and interviewed him about

25    robberies in Western Massachusetts.  All of Mr. Coughlin's

1  statements were recorded on DVD post-*Miranda*.  He admitted

2  to robbing the Sturbridge bank as well banks in Worcester,

3  Palmer, and Greenfield.

4      Mr. Coughlin said he had lost his job and ran out of

5  unemployment benefits and decided to rob banks.  The first

6  bank he robbed was a Santander Bank located at 1125

7  Pleasant Street in Worcester, Mass. on April 24, 2014.  He

8  stole $1,116 (sic).  The second bank was Country Bank

9  located at 1485 North Main Street in Palmer, Mass.

10      THE COURT:  Could I stop you one moment, Mr.

11  Newhouse?  On the amounts, you just indicated from that

12  bank $1,116.

13      MR. NEWHOUSE:  $4,116.

14      THE COURT:  So that's Count 1, 4,116.

15      MR. NEWHOUSE:  It's set forth in the third

16  line.

17      THE COURT:  I know I've asked you once but on

18  Count 4, the amount I'm showing in the indictment is 4,367

19  which you stated a different amount.

20      MR. NEWHOUSE:  I had six dollars.  I think the

21  last number might be seven.  They counted the cash drawer

22  after, so 4,367.

23      THE COURT:  For Count 4, and so Count 1 is

24  4,116.

25      MR. NEWHOUSE:  The second bank he robbed was the

1    Country Bank located at 1485 North Main Street, Palmer,

2    Mass. on June 25, 2014 from which he stole $4,019.  The

3    third Bank was People's United Bank located at 45 Federal

4    Street in Greenfield, Mass in which he stole $7,168.

5        The notes which were left behind at the first three

6    banks were all similar to the ones he used at Sturbridge

7    in which he threatened to harm the tellers if he wasn't

8    given money.  The police also matched fingerprints lifted

9    from the Worcester robbery to the defendant's

10   fingerprints.  Surveillance photographs and witnesses'

11   descriptions corroborated the defendant's confession.

12       The Sturbridge Police obtained a search warrant for

13   the defendant's car and seized the dye-stained money, the

14   shirt, hat, and what turned out to be a CO2 air pistol.

15   Again, the total stolen from banks was $19,626.

16       Each of the tellers told law enforcement officers

17   that the defendant's note and statements put them in fear

18   for their lives.  Each note said he had a gun but he never

19   brandished one during the robberies.  All the banks were

20   FDIC insured.

21           THE COURT:  Mr. Newhouse, is there any statement

22   from any of the victims in this case or witnesses that

23   they -- I know you said nothing was brandished but did any

24   of them see anything that looked like a handgun?

25           MR. NEWHOUSE:  No.

```
1              THE COURT:  And you said an air pistol was

2    recovered in the car?

3              MR. NEWHOUSE:  On the driver's side door.

4              THE COURT:  What did that look like?

5              MR. NEWHOUSE:  A handgun.

6              THE COURT:  The size, do you have a photograph

7    of it?

8              MR. NEWHOUSE:  I don't think I have one.  It's

9    been provided.  It looks like an averaged-size

10   semi-automatic handgun.

11             THE COURT:  All right.  Mr. Coughlin, could you

12   stand?

13             MS. THOMPSON:  Judge, if I could?  I went over

14   the grand jury in preparation for this plea and there was

15   evidence in the grand jury that this was not a handgun.

16   That it was not a functioning firearm within the meaning

17   of any statute.  I just want to make that clear.

18             THE COURT:  That was clear.  If I led you to

19   believe that I thought it was a handgun, I didn't think

20   that it was a functioning handgun, but I was interested to

21   know if anyone saw it, saw the item and what the item

22   essentially looked like, how similar it looked to what

23   would be a functioning handgun.  All right.

24         All right.  Mr. Coughlin, as to the facts, you heard

25   the facts that Mr. Newhouse just put on the record and he
```

1    put on the record facts which laid out going in reverse

2    from a robbery he alleges you committed in September and

3    then backward for the ones that you committed and told the

4    police about.  The facts that he told me, do you agree

5    with those facts?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Was there anything about those facts

8    that you need to change, that you believe were recited in

9    a manner that are substantially different from how they

10   actually occurred, or are there any facts that you just

11   need to tell me about relative to these incidents?

12   (Off-the-record discussion.)

13             MS. THOMPSON:  Judge, I don't know -- about the

14   forfeiture allegation, $4,367 was recovered.  It was

15   dye-stained but it was definitely recovered, and the

16   amount alleged in the forfeiture allegation is the full

17   amount, not the full amount less the amount that was

18   recovered.

19             THE COURT:  So the 19 is the full amount not

20   minus?

21             MS. THOMPSON:  That's correct, and that's what

22   the indictment alleges so I don't know if the government

23   intends to amend the indictment as far as the forfeiture

24   allegation, but it was clear in the grand jury and it's

25   clear from the facts recited that on page 22 of the grand

1    jury it said the only money recovered was the $4,367.

2              THE COURT:  All right.

3              MR. NEWHOUSE:  It was burnt up, Judge, from my

4    look, at least some of the money.  It's in some pictures

5    that were provided in discovery.  I don't think it's

6    usable money.  I think he's got to pay for it.

7              THE COURT:  So the money was destroyed?

8              MR. NEWHOUSE:  It was in his pocket when the dye

9    pack went off.  It caused like a small fire.

10             MS. THOMPSON:  I don't think that the -- I think

11   the government replaces that money, Judge.

12             THE COURT:  I don't know.

13             MS. THOMPSON:  I don't either but I'm just

14   making it.

15             THE COURT:  I think he is pleading guilty to

16   forfeiture allegation.  However, I don't think you're

17   waiving your right to contest the exact amount of the

18   forfeiture if you chose to contest that.

19             THE DEFENDANT:  I just want to bring it to your

20   attention.  Other than that --

21             THE COURT:  Can you hang on one second, sir?

22             MS. THOMPSON:  Because in the grand jury it is

23   described as recovered.

24             THE COURT:  I understand.  I would need to have

25   more facts from the government.  What Mr. Newhouse said

1    certainly makes sense and it could be that it was

2    destroyed beyond being used, and as we sit here I don't

3    know if the U.S. Treasury replaces it if it's destroyed.

4    So I will allow you to plead the forfeiture allegation

5    preserving your right as to an exact amount to the extent

6    that a hearing might be necessary after you and Mr.

7    Newhouse talk a little bit more and maybe do a little

8    looking into how destroyed the money is or what the U.S.

9    Treasury's policy is regarding replacement.  All right?

10            MS. THOMPSON:  I just wanted to make it clear

11   that we contested that amount.

12            THE COURT:  So that is clear for the record.

13   So, Mr. Coughlin, to make the record perfectly clear your

14   attorney for you has indicated that you have some dispute

15   regarding somewhere around $4,000 --

16            THE DEFENDANT:  Yes, Your Honor.

17            THE COURT:  -- give or take, whether or not it

18   was fully destroyed or whether or not that that should be

19   credited towards the forfeiture.  That credit appears to

20   just be a technical aspect of the forfeiture.

21            MS. THOMPSON:  But it's $4,367 and it was

22   described in the grand jury as recovered so I would -- you

23   know, it's part of the indictment and I just want to make

24   it clear that we don't agree with that amount.

25            THE COURT:  All right.  That is clear and I have

1   allowed you to preserve that you're contesting that

2   specific amount, but I just think that you and the

3   government would have to talk some more about the

4   condition of the funds and provide the court with some

5   type of background you find regarding if the Treasury gets

6   it and it's destroyed just replaces it or if there's a

7   cost associated with that.  I don't know any of that right

8   now.

9           MS. THOMPSON:  I don't know that either, Judge,

10  but I do know that that's what alleged in the indictment

11  which is what the Commonwealth (sic) would have to

12  prove.

13          THE COURT:  Well, the  word "recovered," I don't

14  think the word "recovered" satisfies that it was recovered

15  in a condition that it was usable just to go back into the

16  economy right now.

17          MS. THOMPSON:  I don't know.

18          THE COURT:  I'm not drawing the inference that

19  recovered means it's good and it just goes back and people

20  are using it today.  All right.  I'm allowing you to

21  preserve that issue down the road.  All right?

22       Now, Mr. Coughlin, I understood you wanted to say

23  something and I interrupted you while your attorney was

24  talking.

25          THE DEFENDANT:  No, I was going to say except

1    for that discrepancy I agree with everything else.

2              THE COURT:  Except for the discrepancy about how

3    --

4              THE DEFENDANT:  That was the only question I

5    had.

6              THE COURT:  -- damaged the money was.  All

7    right.

8         Now unless either party has something that they think

9    I left out or should add to the colloquy, we're at the

10   point where I will be asking Mr. Coughlin officially

11   whether or not if he wants to change his plea.

12        Mr. Newhouse, anything that you suggest the court

13   should add to the colloquy?

14             MR. NEWHOUSE:  No, Your Honor.

15             THE COURT:  Ms. Thompson?

16             MS. THOMPSON:  No, I think I've made my issues

17   clear.

18             THE COURT:  Yes.

19        Mr. Coughlin, in a few seconds you're about to

20   officially change your plea to that of guilty.  So if you

21   need a moment to talk to your attorney about anything

22   right now, you should take that minute otherwise I'm

23   prepared to proceed.

24             THE DEFENDANT:  No, I think I'm all set to

25   proceed.

| | |
|---|---|
| 1 | THE COURT:  You're all set? |
| 2 | THE DEFENDANT:  Yes, Your Honor. |
| 3 | THE CLERK:  Mr. Coughlin, on Criminal No. |
| 4 | 15-30006, Counts 1 through 4 of the indictment charge you |
| 5 | with Title 21 United States Code Section 2123(a), bank |
| 6 | robbery.  You have previously pled not guilty to this |
| 7 | charge.  Do you wish -- to these charges.  Do you wish to |
| 8 | change your plea to guilty at this time? |
| 9 | THE DEFENDANT:  Yes, I do. |
| 10 | THE CLERK:  How do you plea to Count 1, guilty |
| 11 | or not guilty? |
| 12 | THE COURT:  Wait one second. |
| 13 | MS. THOMPSON:  I noticed that the indictment is |
| 14 | in the language of the statute that says "did by force and |
| 15 | violence," the statute reads by "force and violence or by |
| 16 | fear and intimidation."  We are not pleading to force and |
| 17 | violence.  The entire grand jury transcript relies upon |
| 18 | intimidation. |
| 19 | MR. NEWHOUSE:  The case law is that if you say |
| 20 | you have a gun, that that's a use of violence.  Whether |
| 21 | you show a gun, whether you have a gun, if you threaten to |
| 22 | use a gun, the case law is clear and consistent that is |
| 23 | robbery of a bank by violence and force. |
| 24 | MS. THOMPSON:  I've looked at that law too, |
| 25 | Judge, and I disagree with that, but I want to make it |

1    clear that regardless of what the case law says the grand

2    jury does not say that the grand jury in each instance has

3    -- and Mr. Newhouse was the person basically putting in

4    the evidence.  In each instance it says that the person

5    was intimidated, not force and violence.

6             MR. NEWHOUSE:  I'm the person that read this

7    indictment to the grand jury and they voted on it and the

8    foreperson signed it.  It says in each count "The

9    defendant did by force and violence and by intimidation

10   take from the person and presence of another the money."

11   That's what they voted on.  That's what he can plead

12   guilty to or go to trial on.

13            THE COURT:  Well, let me just try to neutralize

14   this.  The point is the title and section under which

15   you're pleading allows for a finding of guilt or a plea of

16   guilt under Ms. Thompson's scenario or under Mr.

17   Newhouse's scenario.  Do you agree with that?

18            MS. THOMPSON:  I do, but I will say this, that

19   it is in the disjunctive in the statute.  The statute says

20   "whoever, by force and violence, or by intimidation."

21   It's a disjunctive and what I was saying was put into the

22   grand jury.

23            THE COURT:  The indictment reads and.

24            MS. THOMPSON:  I understand that but what was

25   put into the grand jury was specifically intimidation in

1      each count.  I summarized the grand jury and in each

2      instance the teller was intimidated or scared and that's

3      in each instance.  The teller was intimidated, the teller

4      was intimidated or scared; the teller was intimidated or

5      scared.  It never alleges force and violence was used.

6              THE COURT:  But the point is Mr. Newhouse may

7      very well be right regarding how the case law would treat

8      this situation as to force and violence, and you may also

9      be correct regarding intimidation.  The fact is both

10     scenarios, if established, are sufficient for there to be

11     guilt under this title and section.

12         Now whether or not there was intimidation or actual

13     fear felt by victims maybe, and I underscore maybe, an

14     argument that you could raise at sentencing, but for

15     purposes of entry of a plea I'm not sure that your

16     differences of opinion regarding what this conduct means,

17     intimidation versus actual threat or violence matters.

18              MR. NEWHOUSE:  Judge, Ms. Thompson is completely

19     ignoring the parts of the grand jury testimony where the

20     witnesses testified that the note threatening a gun was

21     present in all four robberies.  So she's very -- I think

22     it's close to deceiving the court.

23         Yes, the testimony was that witnesses were

24     intimidated and the testimony was also that a note was

25     left at each of the four robberies saying I have a gun, no

1    funny business, no alarms.  That's the use of violence in

2    robbery of a bank.

3            THE COURT:  But my point is certainly under what

4    you just said, Mr. Newhouse, you could argue that Mr.

5    Coughlin could plead guilty saying the elements have been

6    satisfied, but even if that was minimized by the adoption

7    for purposes of today to what Ms. Thompson says that this

8    was just intimidation not rising to the level of the type

9    of direct violence that you're alleging, that's still

10   enough to satisfy the elements necessary for Mr. Coughlin

11   to plead guilty.

12           MS. THOMPSON:  I don't contest that.

13           THE COURT:  Do you agree with what I just said?

14           MS. THOMPSON:  I agree but I have also done some

15   research and I think the time will come when you'll be

16   wanting to hear from us on force and violence perhaps.

17           THE COURT:  If there is anything regarding force

18   and violence and how that would be interpreted under the

19   case law -- in other words, zooming right in on the issue

20   that you and Mr. Newhouse have a difference of right now

21   -- if there's any issue kind of embedded in there that

22   would make that an obstacle to entering into a plea, then

23   you should tell me right now.

24       In my mind I'm seeing this as an issue that you may

25   be arguing about at sentencing, but if you think it's an

1    obstacle to a plea, then raise that issue now.

2              MS. THOMPSON:  I don't think it's an obstacle to

3    a plea.  I was pointing out to the court that in the

4    statute force and violence is in the disjunctive to

5    intimidation, and those two things are not -- it's not an

6    "and."  It's an "or" in the statute, and while the note

7    went in immediately following each recitation of the note

8    was a statement that the person was intimidated.

9              THE COURT:  All right.  I don't think this is

10   the time to have this disagreement.  I think Mr. Coughlin

11   is pleading guilty to the facts or wants to plead guilty

12   and will have the opportunity in a few seconds to plead

13   guilty to the facts outlined by Mr. Newhouse.

14       The defense's interpretation of those facts versus

15   the government's interpretation of those facts and what

16   legal meanings they trigger is something that I think that

17   can be argued about at sentencing and perhaps they may

18   affect the guidelines.  I'm not sure.

19             MR. NEWHOUSE:  I disagree.  It's alleged "and,"

20   and he either pleads guilty to it or he doesn't.

21             THE COURT:  Let me just look at the statute.  I

22   don't have the statute.  I don't have the title in front

23   of me in this book.  Do you have it?

24             MS. THOMPSON:  I just have it in my notes,

25   Judge, but it's clearly in the disjunctive.

1            MR. NEWHOUSE:  I have a copy of the statute.

2            THE COURT:  Do you have Title 21?

3            MR. NEWHOUSE:  Yes.

4            THE COURT:  Thank you.

5        All four counts are 2113(a)?

6            MS. THOMPSON:  Yes.

7            THE COURT:  A copy of Title 2113(a) was handed

8    to me by the U.S. Attorney states 2113(a) "whoever, by

9    force and violence, or by intimidation," and the language

10   of the indictment indicates "by force and violence and by

11   intimidation."  The difference is the use of and -- the

12   two words "and" and "or."

13       So the language of the indictment does not mirror the

14   language -- the language of the indictment does not mirror

15   the language of the statute.  So given that it does not

16   mirror the language of the statute, Mr. Newhouse, how do

17   you think that Ms. Thompson's position which she's

18   articulating acts as an obstacle to the plea today?

19           MR. NEWHOUSE:  We could have charged or but we

20   charged and because in this case we have the facts for

21   both.  You only have to prove one.  We stand ready to

22   prove both.

23           THE COURT:  Well, that would mean you took on to

24   prove more than you would have to.

25           MR. NEWHOUSE:  Correct.  Correct, and we could

1   and would ask for a jury instruction on either or, but we

2   are alleging both.  We think we can prove both when you

3   hand a 20-something-year-old --

4            THE COURT:  I understand.

5            MR. NEWHOUSE:  -- victims a note that you got a

6   gun, that's violence.

7            THE COURT:  I understand that.  You chose to

8   indict more than the statute requires you to indict.  It's

9   my belief and I'm finding that the defendant can enter a

10  plea of guilty as to what is minimally required by the

11  statute and is not, although he can, is not obligated to

12  plead by admission of the surplus language or the

13  additional language that the government chose to add in

14  the indictment because they perhaps could or believe they

15  could prove more so I'm prepared to accept the change of

16  plea.

17           MS. THOMPSON:  Thank you, Judge.

18           THE COURT:  Now let me just -- Mr. Coughlin,

19  there's been a break here where you've heard the two

20  lawyers doing what good lawyers do, all right, but I want

21  to make sure that we kind of go back to the fundamentals

22  right here.

23       Mr. Newhouse explained to me how you entered these

24  banks with a note, a note suggesting that someone could

25  get hurt and that you had a firearm or a gun, is that

1    correct?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT  All right.

4              THE CLERK:  Mr. Coughlin, on Criminal No.

5    15-30006, Counts 1 through 4 of the indictment charge you

6    with Title 21 United States Code Section 2113(a) bank

7    robbery.  You have previously pled not guilty to these

8    charges.  Do you wish to change your plea to guilty at

9    this time?

10             THE DEFENDANT:  Yes, I do.

11             THE CLERK:  How do you plea to Count 1, guilty

12   or not guilty?

13             THE DEFENDANT:  Guilty.

14             THE CLERK:  How do you plea as to Count 2,

15   guilty or not guilty?

16             THE DEFENDANT:  Guilty.

17             THE CLERK:  How do you plea as to Count 3,

18   guilty or not guilty?

19             THE DEFENDANT:  Guilty.

20             THE CLERK:  How do you plea as to Count 4,

21   guilty or not guilty?

22             THE DEFENDANT:  Guilty.

23             THE CLERK:  Thank you.

24             THE COURT:  All right.  Mr. Coughlin, I'm going

25   to make a finding that your plea in this case was made

1    fully competent.  You're capable of entering into an

2    informed plea.

3         I have observed you during this plea hearing.  I have

4    put questions to you during this plea hearing.  I find

5    that your responses have been thoughtful and appropriate.

6    You don't appear confused to me in any way.

7         It appears you have a very good dialog and line of

8    communication with your attorney.  It appears you have an

9    understanding of both the elements of the crime and the

10   sentencing procedure that will be undertaken by this

11   court.

12        I find that the plea is supported by an independent

13   basis and fact containing the essential elements of the

14   offense necessary under the statute for there to be a

15   finding of guilt under this offense.  I find the plea is

16   being made knowingly and voluntarily.  The plea is

17   therefore accepted and you're adjudicated guilty of these

18   offenses.

19        Now, what happens next is that a presentence will be

20   prepared by the probation department and it's likely

21   you've already met Mr. Rinaldi who's seated behind you.

22   Mr. Rinaldi will be asking you to contribute information

23   to that presentence report.  Your attorney will be, can

24   be, with you.  Any time you meet with anyone regarding

25   this case, and that includes someone from the probation

1    department, Mr. Rinaldi, your attorney can advice you

2    during that process.  All right?

3         You will be permitted, as will the government, to

4    review the presentence report that is prepared by Mr.

5    Rinaldi, to file any objections to it, and to petition the

6    court to reach different conclusions that perhaps that

7    presentence report reached.  The U.S. Attorney's office

8    will have the same opportunity.  Do you understand?

9              THE DEFENDANT:  Yes, I do, Your Honor.

10             THE COURT:  All right.  If there are any victims

11   of this offense -- there are victims of this offense,

12   those victims will be afforded an opportunity to be heard

13   at sentencing.  Do you understand?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  So two things:  We need a sentencing

16   date and for the parties to articulate their position

17   regarding release pending sentencing.

18             THE CLERK:  March 3rd at two o'clock for

19   sentencing.

20             MS. THOMPSON:  I don't have a calendar that goes

21   to March 3rd so I'm pretty sure that I'm available.

22             THE COURT:  All right.  Obviously you know the

23   procedure to change the date if there's a problem.

24             MR. NEWHOUSE:  Mr. Newhouse.

25             MS. THOMPSON:  What time did you say?

| | |
|---|---|
| 1 | THE CLERK:  Two o'clock. |
| 2 | MS. THOMPSON:  Two o'clock. |
| 3 | THE COURT:  You can be seated, Mr. Coughlin. |
| 4 | THE DEFENDANT:  Thank you. |
| 5 | THE COURT:  Mr. Newhouse, the government's |
| 6 | position and statutory reference relative to release? |
| 7 | MR. NEWHOUSE:  Pursuant to Title 18, Section |
| 8 | 3143(a)(2) that "the judicial officer shall order that a |
| 9 | person who has been found guilty of an offense described |
| 10 | in subparagraph (A) of sub section (f), subsection (f)(1) |
| 11 | of 18 U.S.C. 3142 and is awaiting imposition or execution |
| 12 | of sentence be detained."  That's unless one or another of |
| 13 | one and two happen, and you would have to find "a |
| 14 | substantial likelihood that a motion for acquittal or new |
| 15 | trial would be granted. |
| 16 | The defendant just pled guilty so there's no chance |
| 17 | of a new trial motion; or (ii), that "an attorney for the |
| 18 | government is recommending no sentence of imprisonment be |
| 19 | imposed on the person," and that's not going to happen. |
| 20 | Because neither one of those disjunctive things will be |
| 21 | happening you go to "and," so it has to be a combination |
| 22 | of one or two and (B) you finding that "by clear and |
| 23 | convincing evidence that the person is not likely to flee |
| 24 | or pose a danger." |
| 25 | I'd suggest, Judge, there's no statutory ability for |

1    you to do anything other than impose a sentence -- I mean,

2    detain him right now.  I would note that in Ms. Thompson's

3    most recent motion to continue the sentencing, (sic) the

4    reason she continued it the last time was the defendant

5    could prepare himself for being remanded at this time, and

6    I'd suggest, Judge, statutorily there's no way that you do

7    not have -- you have to remand him now.

8                 THE COURT:  Ms. Thompson.

9                 MS. THOMPSON:  I didn't understand all of the

10   statutory reference I have to say on Mr. Newhouse's part,

11   but this is a relatively --

12                THE COURT:  This is one of the times that I

13   actually did understand Mr. Newhouse.

14                MS. THOMPSON:  Really?

15                THE COURT:  No, I did follow his reference to

16   the statute and 3143(a)(2) does seem -- it does indicate

17   that it would be necessary that the attorney for the

18   government recommend no imprisonment and -- I'm looking at

19   the word right now -- and I find by clear and convincing

20   evidence no likelihood of flight or danger to the

21   community.  That's if there's a certain offense which

22   triggers application of this section and Mr. Newhouse

23   indicated there is that triggering offense.  I believe

24   that was correct that there is a triggering offense.

25                MS. THOMPSON:  When I spoke to Newhouse earlier

1    he indicated to me that if this crime was committed by

2    force and violence that it would be triggering that

3    provision for mandatory return to incarceration.

4        I will inform this court that Mr. Coughlin has

5    actually served eight months in pretrial detention before

6    he was indicted for these very same offenses.  He served

7    eight months in pretrial detention in Worcester County

8    House of Correction.  He was not even -- did not even

9    consider release himself until we came to be arraigned in

10   this matter before Magistrate Judge Robertson.

11       He was released and has appeared here on $1,000 bail

12   posted by Ms. Allain who's in court today and on condition

13   that he satisfy a number of requirements which he has

14   done.  He has completed 24 sessions with the Community

15   Renewal Team in Connecticut where he lives.

16       He has completed 12 group sessions and 12 individual

17   sessions with a psychologist or a counselor and is on a

18   GPS and has maintained a curfew of 6 a.m. until 8 p.m. and

19   has consistently sought employment.

20       I spoke with Gregg Campos who was his pretrial

21   release officer in Connecticut, and Mr. Coughlin was

22   unable to obtain employment and so on the first of

23   November Ms. Allain purchased the Hidden Treasury

24   Consignment Shop which Mr. Coughlin manages.  He works at

25   that shop from 10 a.m. until 6 p.m. every day except

1    Sunday, and from 10 a.m. until 2 p.m. on Sunday.

2        He is basically the only person who runs the shop

3    because Ms. Allain is employed full time by Hertz at

4    Bradley.  So this shop has been in business for about 45

5    days and if Mr. Coughlin is detained pending sentencing,

6    the shop will basically close.  It will just -- the

7    investment will be gone.

8        It's a difficult matter for a person to be released

9    and then have to find employment, find employment, be

10   employed fully, maintain all the requirements of the

11   release which Mr. Coughlin has done and then have this

12   investment be basically come to not because without him

13   Ms. Allain cannot run the business.

14       I think there's every reason to leave Mr. Coughlin on

15   his GPS during this season when this business may actually

16   be able to get on its feet before he's sentenced.

17       I've noticed that one of the things that is

18   surprising to me about the requirement that someone be

19   detained is that this doesn't even have a requirement of

20   incarceration, this statute.  It can be -- the punishment

21   can be satisfied by a fine, nothing but a fine in this or

22   it can be satisfied by imprisonment or both a fine and

23   imprisonment.  So here we are in a situation where Mr.

24   Coughlin has pled guilty to an offense that can be fully

25   satisfied by a fine under the statute as written and it

1    seems to me that his detention at this point would be

2    inappropriate.

3                THE COURT:  And you said there was a difference

4    in your calculation of the guidelines?

5                MS. THOMPSON:  Yes.

6                THE COURT:  Not holding you to it, but in a very

7    rough sense what's your calculation?

8                MS. THOMPSON:  I can give you an exact sense of

9    my calculation, Judge.  It's 30 to 37 months and I looked

10   at -- I recognized 41 to 51 months because that was the

11   calculation without acceptance of responsibility, 41 to 51

12   months.  I took a 20 base offense level plus two for

13   actually having obtained something as a result of the

14   robbery minus three for acceptance of responsibility and I

15   came up with 19 and one which translated to 30 to 37

16   months, which eight months has already been served by Mr.

17   Coughlin.

18                THE COURT:  All right.

19                MR. NEWHOUSE:  Judge, the government comes to a

20   different guideline range because there's an enhancement

21   under the sentencing guideline range for between 10,000

22   and $50,000 being stolen which Ms. Thompson didn't include

23   and there's also an enhancement for threatening during the

24   course of a robbery.

25        In any event, Judge, none of what Ms. Thompson just

1   said has anything to do with 3143 or has anything to

2   overstep or puts aside anything that 3143(a)(2).

3          You know, Judge, the defendant could have sought the

4   employment that he has now instead of terrorizing those

5   four young women behind the teller counters at the bank he

6   chose not to but that's all aside, Judge.  It says you

7   shall imprison -- you shall remand him now under these

8   circumstances and that's what should happen.

9              THE COURT:  Ms. Thompson 3143(a)(2), the point

10  well taken that the statute allows for -- I see you

11  raising your hand.

12             PROBATION OFFICER:  Your Honor, I'm sorry.

13  Realizing the guidelines are only advisory, my experience

14  with armed robbery is not to group them.  There's going to

15  be four separate groups of 20 to 22 and that is going to

16  have a multiple group adjustment with an assignment unit.

17  I think the guidelines are going to be a lot higher than

18  both parties anticipate.

19             MS. THOMPSON:  This was not armed robbery; this

20  was bank robbery.

21             PROBATION OFFICER:  I believe it's still a

22  non-grouping.

23             THE COURT:  Thank you for raising that and I'm

24  sure this is going to be a very detailed sentencing where

25  the parties are fully prepared to argue about all of the

1    issues that have come up here today and I'm sure others.

2        As I was saying, Ms. Thompson, 3143(a)(2) your point

3    was well taken about, look, the statute allows for

4    resolution of this.  It doesn't even have to be an

5    imposition of a sentence but that's not what drives

6    3143(a)(2).

7        The language specifically is -- frankly even if the

8    statute allows for a punishment by a fine only, the

9    inquiry is will an attorney for the government recommend

10   no sentence and in this case we have the attorney for the

11   government saying for sure they are recommending a

12   sentence.

13       So the way I'm reading this statute I would need both

14   Attorney Newhouse saying we are going to not ask for

15   imprisonment and then I would have to also find not a

16   likelihood of flight or danger, and I recognize that

17   sometimes in these circumstances the government does come

18   in and not request detention under this statute in

19   circumstances where they could.  That certainly is their

20   prerogative.

21       Implicit or necessary for us to consider is whether

22   or not that section that I just talked about applies, Ms.

23   Thompson, because it references a section that talks about

24   a crime of violence.  So it opens up a question as to what

25   is a crime of violence which is certainly a timely

1   question.  It's being considered on a lot of fronts.

2        I can tell you that for purposes of application of

3   3143 based upon the intimidation that you indicated that

4   your client was pleading guilty to as part of the statute

5   and I found satisfied the statute, I believe that the

6   intimidation for purposes of this detention, that the

7   intimidation and the way it happened in this case would

8   amount to a use of violence that would trigger the

9   application of 3143.

10       Also I note that it seems to me that trying to be

11  realistic, I think the defense did kind of show that

12  attempt to be realistic in your agreed to motion to

13  continue that was filed on December 7th where the defense

14  indicated that -- the government indicated that it will

15  affirmatively seek to have Mr. Coughlin detained so you

16  were given that notice and that the defendant required a

17  few days to prepare for that eventuality.  I think using

18  the term that eventuality is taking into consideration the

19  realistic situation that we are in given the facts and

20  circumstances and even given your reading of the

21  guidelines that you would propose, Ms. Thompson.

22       It certainly doesn't make it easier, but I'm not sure

23  you would even realistically be arguing to me -- if you

24  can, tell me -- that you would even realistically be

25  arguing to me at sentencing that these offenses would

1    require no incarceration.  I'm confident you're going to

2    be arguing they require a significantly less period of

3    incarceration than the government is going to ask for, am

4    I correct?  Again you're not held to what you say.  This

5    is for purposes of me deciding this detention issue.

6           MS. THOMPSON:  Yes, I understand that, Judge,

7    but that's why I've told you that Mr. Coughlin has already

8    been incarcerated for eight months.  He was incarcerated

9    for eight months while the United States decided whether

10   or not to indict him federally.  He was held for eight

11   months in the most abysmal of all houses of correction in

12   the Commonwealth which is the Worcester County House of

13   Correction.

14       I would point out that I have done research on this

15   because I wanted to make sure that the note was adequate

16   to qualify as intimidation, as receiving by intimidation

17   and so I did find a case entitled *United States v. Sam*.

18   It's a Fifth Circuit case, 467 F.3d, 857 in which a note

19   was handed over and the note asserted that the person had

20   a gun although he didn't show it and it said that that was

21   an adequate link, nexus, to satisfy the intimidation

22   portion of the statute.

23       So as I read the grand jury which went into -- this

24   case went into the grand jury in less than half an hour,

25   about 26 minutes I think, and in each instance there was

1   no effort to show force and violence to the grand jury.

2   The question was in each instance did the teller -- was

3   the teller intimidated or scared and the answer was yes in

4   each instance.

5           THE COURT:  I understand what you're telling me,

6   but under 3143 the consideration boils down to is it a

7   crime of violence, not force and violence, a crime of

8   violence, and I'm finding that intimidation under these

9   circumstances satisfies me as being violent and so

10  therefore 3143 is applicable.

11      I'm sure if anyone can come up with a technical legal

12  argument regarding that applicability, it's you and if you

13  want to file those after this after you've a chance to

14  look at it you can, but that's my finding.  That the

15  intimidation in this case qualifies as violence for

16  purposes of applying 3143.

17      I'm making that finding in that very narrow scope of

18  applying this statute as to detention.  It doesn't get --

19  I've been in this situation where you're sitting, Ms.

20  Thompson.  It doesn't get easy for a client to be taken

21  into custody, released, and then go back and be sentenced.

22  It's not going to get any easier.

23      I'm trying to just touch on the reality of the

24  situation and that's why I asked you ultimately even on

25  the best day I don't see you coming in here and saying

1     probation only.   Under these circumstances I find that

2     3143 is applicable and I'm going to take Mr. Coughlin into

3     custody.

4               THE CLERK:   All rise.

5     **(Hearing concluded at 4:17.)**

1                         C E R T I F I C A T E

2

3

4          I, Alice Moran, RMR, RPR, CSR, Official Court

5    Reporter for the United States District Court for the

6    District of Massachusetts, do hereby certify that the

7    foregoing transcript constitutes, to the best of my skill

8    and ability, a true and accurate transcription of my

9    stenotype notes taken in the above-entitled matter.

10

11

12   Date:  August 10, 2016

13

14   /s/ Alice Moran

15   _____
     Alice Moran
16   Offical Court Reporter

17

18

19                 Alice Moran, CSR, RPR, RMR
                      Official Court Reporter
20                 300 State Street, Room 303D
                      Springfield, MA 01105
21                      413-731-0086
                    alice.moran@verizon.net
22

23

24

25